# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1625V
Filed: February 24, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| ROY ROMERO, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Interim Attorneys' Fees and |
| | * | Costs |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*Michael Baseluos, Esq.*, Baseluos Law Firm, PLLC, San Antonio, TX, for petitioner.
*Steven Santayana, Esq*., U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On October 19, 2018, Roy Romero ("petitioner" or "Mr. Romero") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that he suffered acute inflammatory demyelinating polyneuropathy ("AIDP"), a variant of Guillain-Barré Syndrome ("GBS"), as a result of the influenza ("flu") vaccine he received on October 21, 2016. Petition, ECF No. 1. Petitioner now seeks an award of interim attorneys' fees and costs.

### I. Procedural History

The petition was filed on October 19, 2018, along with medical records and an affidavit from petitioner. Petitioner's Exhibits ("Pet. Ex.") 1-4, ECF No. 1. The case was assigned to then-Chief Special Master Dorsey and the Special Processing Unit ("SPU"). ECF Nos. 4-5. On

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

November 1, 2018, petitioner filed his affidavit of no prior civil action and a Statement of Completion. Pet. Ex. 5, ECF Nos. 8-9. Petitioner filed additional medical records on January 9, 2019. Pet. Ex. 6, ECF No. 10.

An initial status conference was held on February 21, 2019, during which the assigned staff attorney indicated that pre-vaccination records appeared to be outstanding. Respondent advised that he had not yet conducted a review of the record. ECF No. 11. Thereafter, petitioner filed medical records and a supplemental petition on April 5, 2019; additional medical records on April 10, 2019; and medical records and an amended Statement of Completion on May 20, 2019. ECF Nos. 12-16.

On September 4, 2019, respondent filed a status report identifying additional records that remained outstanding. ECF No. 20. On September 18, 2019, petitioner filed copies of affidavits regarding requests for records and a status report responding to each of the requests for records made by respondent in his September 4, 2019 status report. ECF No. 23.

Petitioner filed additional records on October 6, 2019. ECF No. 25. After one Motion for extension of time which was granted, respondent filed a status report on November 6, 2019, advising that the medical records provided are not sufficiently responsive to his record request and that he identified records that continue to be missing and records that have newly been identified as missing via email to petitioner's counsel. ECF No. 27. Respondent was then ordered to file a detailed list of the outstanding records he identified. ECF No. 28.

Petitioner filed medical records on November 11, 2019 and November 15, 2019. Pet. Ex. 16, ECF No. 29; Pet. Ex. 17, ECF No. 30. Respondent filed a status report containing a list of additional outstanding records on November 22, 2019. ECF No. 31. Thereafter, on December 19, 2019, petitioner filed records and an amended Statement of Completion. Pet. Ex. 19-20, ECF Nos. 32-34.

On January 27, 2020, respondent filed a status report advising that though a preliminary review of the record had been completed, he continued to have concerns about the completeness of the record and intended to defend the case, requesting a deadline for his Rule 4(c) Report. ECF No. 36.

After four Motions for extension of time which were granted, respondent filed his Rule 4(c) Report on May 14, 2020. ECF Nos. 37-41. A status conference was held thereafter on July 1, 2020, during which the Chief Special Master's initial impression of the case was provided by the staff attorney, explaining that the Chief Special Master did not believe the evidence meets the Table requirements for GBS and it was unlikely that petitioner could establish entitlement via a causation-in-fact claim. The parties then requested a conference with the Chief Special Master. ECF No. 42.

On July 13, 2020, Chief Special Master Corcoran held a status conference. Petitioner's counsel advised that he consulted with an expert who believed that petitioner's pre-vaccination pancreatitis could have caused onset sooner than three days. Chief Special Master Corcoran repeated his initial view of the case that the Table claim did not appear viable due to onset in less

than three days, but if supported by the proposed expert opinion, petitioner might succeed with a non-Table causation-in-fact claim. Chief Special Master Corcoran also noted his intent to dismiss the Table claim and transfer the case from SPU, ordering petitioner to show cause as to why his Table claim should not be dismissed before the case was transferred out of SPU. ECF No. 43.

After two Motions for extension of time were granted, petitioner filed an affidavit on the timeline of his symptoms on September 27, 2020, and a memorandum on his Table injury claim the next day. Pet. Ex. 21, ECF No. 46; ECF No. 47. Respondent filed his response on October 20, 2020, arguing that petitioner's Table claim should be dismissed and that it is questionable as to whether it is reasonable for petitioner to proceed with a causation-in-fact claim. ECF No. 48. Petitioner filed a reply on October 21, 2020. ECF No. 49.

On March 11, 2021, Chief Special Master Corcoran issued Findings of Fact and Conclusions of Law dismissing petitioner's Table Flu/GBS claim. ECF No. 50.

The matter was reassigned to the undersigned and a status conference was held on May 26, 2021. The progression of the case was reviewed with counsel, and petitioner was ordered to file several outstanding records, a supplemental affidavit related to his return to work, and a status report confirming that the record was complete from his perspective. ECF No. 54.

After one granted Motion for extension of time, petitioner filed additional records on October 6, 2021 and October 11, 2021. Pet. Ex. 22-33, ECF No. 57; Pet. Ex. 34-36, ECF No. 59. Petitioner then filed another Motion for extension of time, which was granted, thereafter filing more records on October 12, 2021 and October 27, 2021. Pet. Ex. 37, ECF No. 63; Pet. Ex. 38-39, ECF Nos. 64-65. Disability and medical records were filed on November 19, 2021, and an amended Statement of Completion was filed on December 12, 2021. Pet. Ex. 40-41, ECF No. 68; ECF No. 69.

On December 16, 2021, respondent filed a status report advising that he was satisfied that all the necessary records had been filed. ECF No.70. Petitioner was subsequently ordered to file an expert report. ECF Nos. 71-72.

After one granted Motion for extension of time, petitioner filed expert reports and CVs from Dr. Kinsbourne and Dr. Akbari. Pet. Ex. 42-45; ECF No. 74. Petitioner filed the corresponding medical literature on April 5, 2022 and April 16, 2022. Pet. Ex. 45 ref. 1 – ref. 7, ECF No. 75; Pet. Ex. 43 ref. 1 – ref. 56, ECF Nos. 76-80.

Respondent filed expert reports, CVs, and medical literature from Dr. Jamieson and Dr. Tompkins on July 7, 2022, after one granted Motion for extension of time. Respondent's Exhibit ("Resp. Ex.") A-B, ECF Nos. 82-86.

Following two granted Motions for extension of time, petitioner filed supplemental reports and medical literature from Drs. Akbari and Kinsbourne on November 14, 2022. Pet. Ex. 46-47, ECF Nos. 89-93.

On December 20, 2022, petitioner filed a Motion for Interim Attorneys' Fees and Costs requesting a total of $188,955.10, representing $97,578.00 in fees and $91,417.10 in costs. Motion for Interim Fees, ECF No. 96. Respondent filed a response on December 21, 2022, stating that he "is satisfied that the statutory requirements for an award of attorneys' fees are met in this case" and deferring to the special master for a determination of interim fees and costs. Response to Motion for Interim Fees ("Response"), ECF No. 97. Petitioner did not file a reply.

This matter is now ripe for determination.

## II. Legal Framework

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

**A.     Availability of Interim Fees**

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making

4

this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. This case has been pending for more than four years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g.*, *Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Respondent has raised no objection to the motion and submitted that petitioner has satisfied the statutory requirements. Response at 2.

Moreover, petitioner has expended significant time and costs in litigating this matter thus far. Resolution of this case will take time, and given the Court's current calendar, once the parties have completed the exchange of expert reports, an entitlement hearing or Motion for ruling on the record will need to be scheduled. The entitlement decision will require additional time thereafter. Accordingly, the circumstances of this case warrant an award of interim fees and costs so as not to impose economic hardship on petitioner.

**B.     Reasonable Hourly Rates**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorney's experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests the following hourly rates for the work of his attorney, Mr. Michael Baseluos: $295 for work performed in 2018, $315 for work performed in 2019, $335 for work

---

[3] The 2015-2022 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

performed in 2020, $350 for work performed in 2021, and $375 for work performed in 2022. Motion for Interim Fees, Ex. A. These rates are consistent with rates Mr. Baseluos has previously been awarded for his Vaccine Program work, and the undersigned finds them to be reasonable herein. *See Bristow v. Sec'y of Health & Human Servs.*, No. 19-457V, 2022 WL 17821111 (Fed. Cl. Spec. Mstr. Nov. 15, 2022).

Accordingly, the hourly rates are awarded as requested above.

### C.    Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee request hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The overall hours spent on this matter appear to be reasonable. The undersigned has reviewed the billing entries and finds that, generally, the billing entries adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear objectionable, nor has respondent identified any entries as objectionable. Accordingly, petitioner is awarded interim attorneys' fees of **$97,578.00**.

### D.    Reasonable Costs

Petitioner requests a total of $91,417.10 in costs. Motion for Interim Fees at 9. The requested costs consist of securing medical records, the Court's filing fee, postage costs, and fees for two experts, Dr. Omid Akbari and Dr. Marcel Kinsbourne. Motion for Interim Fees, Ex. C, G, I.

1. **Dr. Omid Akbari**

Dr. Omid Akbari received a $5,000.00 retainer[4] and billed 109.1 hours at a rate of $550 per hour, for a total of $60,005.00. Since counsel included the $5,000.00 retainer in his costs, he requested a total of $55,005.00 at a rate of $550 for Dr. Akbari. Motion for Interim Fees, Ex. G. However, Dr. Akbari has been consistently awarded a rate of $500 per hour by special masters in the program. *See Bristow*, No. 19-457V, 2022 WL 17821111 (listing cases in which Dr. Akbari has been awarded $500 per hour); *Wolf v. Sec'y of Health & Human Servs.*, No. 17-308V, 2022 WL 10075190 (Fed. Cl. Spec. Mstr. Sept. 28, 2022) (same). Accordingly, I find $500 per hour to be the appropriate rate for Dr. Akbari.

Dr. Akbari billed for 109.1 hours of work between the months of July 2020 through November 2022 and provided two expert reports. This is a large expenditure of time for a flu/GBS case that has not yet gone to hearing. However, Dr. Akbari provided very detailed records of the time he spent on this case and will therefore be awarded for the time he spent. Thus, the amount awarded to Dr. Akbari will be reduced by **$5,455.00** to reflect application of the $500 per hour rate, resulting in a total fee to Dr. Akbari of **$54,550.00**.

2. **Dr. Marcel Kinsbourne**

Dr. Marcel Kinsbourne received a $2,000.00 retainer[5] and billed 51.6 hours at a rate of $500 per hour for preparing two expert reports between March 2020 and November 2022. Motion for Interim Fees, Ex. I. Since counsel also included this $2,000.00 retainer in his costs, he requested a total of $23,800.00 at a rate of $500 for Dr. Kinsbourne. This rate is consistent with what Dr. Kinsbourne has routinely been awarded for his work in the Program. *See Fulling v. Sec'y of Health & Human Servs.*, No. 18-1549V, 2022 WL 3023505 (Fed. Cl. Spec. Mstr. July 11, 2022); *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1630V, 2022 WL 702160 (Fed. Cl. Spec. Mstr. Feb. 8, 2022). Dr. Kinsbourne provided detailed records of his time and I find the hours expended generally reasonable. Therefore, the costs associated with his work will be paid in full, and Dr. Kinsbourne is awarded a total fee of **$25,800.00**.

3. **Total Reasonable Costs**

Petitioner requests total costs of $12,612.10, which include a $5,000.00 retainer for Dr. Akbari and a $2,000.00 retainer for Dr. Kinsbourne. Motion for Interim Fees, Ex. A at 34. Since the retainers for Dr. Akbari and Dr. Kinsbourne have already been included and awarded in the sections above discussing expert costs, they will be deducted here. I have reviewed the remaining costs and find them reasonable and supported with adequate documentation, and petitioner's counsel is awarded **$5,612.10** in costs. Accordingly, petitioner is awarded a total of **$85,962.10**[6] in costs.

---

[4] Petitioner included this amount in his costs. Motion for Interim Fees at 9.
[5] Petitioner also included this amount in his costs. Motion for Interim Fees at 9.
[6] $54,550 (Dr. Akbari's fee) + $25,800 (Dr. Kinsbourne's fee) + $5,612.10 (counsel's other costs) = $85, 962.10.

## IV. Conclusion

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED, in part**. Accordingly, I award **$183,540.10,** representing $97,578.00 in attorneys' fees and $85,962.10 in attorneys' costs in the form of a check payable jointly to **petitioner and petitioner's counsel, Michael Baseluos, Esq.** The clerk shall enter judgment accordingly.[7]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.